# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5292 | **DATE** | 9/18/2002 |
| **CASE TITLE** | AMERISURE INSURANCE COMPANY vs. ROLL SERVICE, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Amerisure's motion for partial summary judgment on coverage and Roll Service's motion for summary judgment are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 19 2002 | |
| | Notified counsel by telephone. | | date docketed | S1 |
| ✓ | Docketing to mail notices. | | CDY | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG | courtroom deputy's initials | U.S. DISTRICT COURT 02 SEP 18 PM 6:18 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERISURE INSURANCE COMPANY,    )
                                )    Case No. 01 C 5292
        Plaintiff,              )
                                )    Honorable John W. Darrah
    v.                          )
                                )
ROLL SERVICE, INC.,             )
                                )
        Defendant.              )



## MEMORANDUM OPINION AND ORDER

Plaintiff, Amerisure Insurance Company ("Amerisure"), filed a single-count complaint against Defendant, Roll Service, Inc. ("Roll Service"), seeking a declaration limiting its liability under an insurance policy. The parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Count I. For the reasons stated herein, the parties' motions for summary judgment are denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific

-1-

evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts[1] (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Amerisure is a Michigan insurance company with its principal place of business in Farmington Hills, Michigan. (Pl.'s 56.1 ¶ 1.) Amerisure is authorized by the Illinois Department of Insurance to issue insurance policies in Illinois. (Def.'s 56.1 ¶ 1.)

Roll Service is an Illinois corporation engaged in the business of manufacturing, refinishing and restoring rolls in Glenwood, Illinois. (Def.'s 56.1 ¶ 2.) In or about 1988, Roll Service purchased an industrial oven ("the oven") from Jensen Oven Company, Inc. ("Jensen Oven"). (Pl.'s 56.1 ¶ 13.)

---

[1]Roll Service did not file a response to Amerisure's Statement of Additional Facts. Therefore, these paragraphs are deemed as admitted.

The oven was used by Roll Service to resurface and refurbish large industrial rolls used in printing presses on which paper travelled. (Pl.'s 56.1 ¶ 13.)

On August 27, 1999, Amerisure issued insurance policy number CPP1321182000000 ("the policy") to Roll Service. (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 5.) The policy provided coverage for a term of six months from July 1, 1999 to January 1, 2000. (Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 5.) The policy provided general liability and commercial property coverage and also insured against business income losses and extra expense resulting from certain causes during the policy's term. (Def.'s 56.1 ¶ 10; Pl.'s 56.1 ¶ 7.) The policy provided "Business Income" coverage for "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'Period of Restoration.'" (Pl.'s 56.1 ¶ 8.) The policy defined the "Period of Restoration" as:

the period of time that:

    a.    Begins:

        (1) 72 hours after the time of direct physical loss or damage for Business Income coverage ; or

        (2) Immediately after the time of direct physical loss or damage for Extra Expense coverage:

        Caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.    Ends on the earlier of:

        (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

(Pl.'s 56.1 ¶ 9.)

On October 19, 1999, while the policy was in effect, an explosion at Roll Service's place of business caused property damage to the premises. (Def.'s 56.1 ¶ 12.) The explosion severely damaged the oven. (Pl.'s 56.1 ¶ 14.) The oven explosion and resulting business interruption was a direct loss covered by the policy. (Def.'s 56.1 ¶ 14.)

Amerisure was notified of the damage and confirmed to Roll Service that the policy provided coverage to Roll Service for the damage to the oven. (Pl.'s 56.1 ¶ 15.) Amerisure retained Fred Jensen ("Jensen"), President of Jensen Oven, to investigate the cause of the explosion at Roll Service. (Def.'s 56.1 ¶ 15.)

Because of the extensive nature of the damage to the oven, Amerisure agreed to pay for the replacement of the damaged oven. (Pl.'s 56.1 ¶ 15.) Roll Service suffered loss of business income and incurred "extra expenses" which Amerisure agreed to pay in accordance with the terms and provisions of the insurance contract. (Pl.'s 56.1 ¶ 15.) Specifically, Amerisure provided Roll Service with funds to lease a temporary oven from Jensen Oven. (Def.'s 56.1 ¶ 18.) The leased, temporary oven was smaller than and not of similar quality to the oven that had been destroyed. (Def.'s 56.1 ¶ 19.)

Clifford Nelson ("Nelson"), an officer of Roll Service, was involved in making the decision to purchase an oven to replace the one that was damaged on October 19, 1999. (Pl.'s 56.1 ¶ 16.) Nelson spoke with Jensen and, on October 25, 1999, received a quotation for a replacement oven at a cost of $174,000. (Pl.'s 56.1 ¶ 16.) The proposed replacement oven was similar to the oven that was damaged but also had some improvements, such as the fact that it was forty feet long at original construction and had modern instrumentation. (Pl.'s 56.1 ¶ 17.) The quotation stated that the replacement oven could be delivered, assembled and ready for operation within eight weeks of

-4-

acceptance of the quotation. (Pl.'s 56.1 ¶ 16.)

Prior to Roll Service's verbal order of the replacement oven from Jensen Oven, Jensen, without Roll Service's knowledge, discussed the oven purchase with Ellison of Amerisure, submitted an estimate for the oven purchase directly to Ellison, and invited her to inspect his plant. (Def.'s 56.1 ¶ 20.) While Roll Service sought additional bids from other suppliers, only Jensen had direct contact with Ellison. (Def.'s 56.1 ¶ 21.) Prior to approving payments, Ellison had at least eight telephone or face-to-face contacts with Jensen, in addition to written communication. (Def.'s 56.1 ¶ 21.)

Under the policy, Amerisure provided Roll Service funds to retain Jensen Oven to fabricate and install a replacement oven at a cost of $174,000. (Def.'s 56.1 ¶ 23.) The purchase of the permanent replacement oven was approved by Amerisure, which issued a check payable to Roll Service in the amount of $69,600 as partial payment of the purchase price on December 6, 1999. (Def.'s 56.1 ¶ 26.) Amerisure issued a second partial payment check payable to Jensen Oven and Roll Service on February 10, 2000, in the amount of $43,500. (Def.'s 56.1 ¶ 28.) Amerisure delivered this check directly to Jensen after the replacement oven had been shipped to Roll Service. (Def.'s 56.1 ¶ 28.)

After a number of delays, which the parties do not elaborate upon, on March 11, 2002, Jensen Oven installed the replacement oven. (Def.'s 56.1 ¶ 29.) The start-up report prepared by Jensen Oven's employees listed unresolved problems with the replacement oven which were recognized and documented at that time. (Def.'s 56.1 ¶ 29.) The replacement oven did not perform properly. (Def.'s 56.1 ¶ 30.) Roll Service advised Amerisure, via its adjuster, and Jensen Oven of several deficiencies in operation of the replacement oven. (Def.'s 56.1 ¶¶ 30, 31.)

On March 15, 2000, Roll Service provided a "punch list" of problems to be corrected by

Jensen Oven and withheld final payment pending repair, correction or resolution of these problems. (Def.'s 56.1 ¶ 32.) Roll Service later advised Jensen Oven of problems with the replacement oven blower. (Def.'s 56.1 ¶ 34.)

In addition to the items on the "punch list", the replacement oven was found to have problems in temperature control and consistency, air flow, and to have caused imperfections in the surface of Teflon-coated rolls which were treated in the replacement oven. (Def.'s 56.1 ¶ 36.)

Jensen Oven representatives examined flaking of the aluminized surface of the burner box in the replacement oven. (Def.'s 56.1 ¶ 37.) Amerisure then retained Packer Engineering ("Packer") to determine the cause of the flaking of the aluminized surfaces. (Def.'s 56.1 ¶ 38.) Packer concluded in their report of June 5, 2001, that the flaking problems was the result of high temperatures not the presence of chromic acid fumes in the air at Roll Service. (Def.'s 56.1 ¶ 38.) In an effort to remedy the flaking on the surface of the burner box, Jensen suggested replacing the aluminized surfaces with stainless steel cladding. (Def.'s 56.1 ¶ 39.)

At Amerisure's request, on October 11, 2000, Roll Service provided a partial proof of loss in the amount of $415,199.08, which included losses documented as of September 28, 2000. (Def.'s 56.1 ¶ 46.) That amount included loss of building contents, undisputed business income loss, and extra expenses. (Def.'s 56.1 ¶ 46.) Roll Service filed with Amerisure a claim for benefits under the policy, demanding payment of the sum of $721,083.00, to and including the date of August 31, 2000, pursuant to the provisions of the policy. (Def.'s 56.1 ¶ 48.)

Amerisure filed a complaint, seeking a declaratory judgment limiting its liability for the interruption of Roll Service's business operations. (Def.'s 56.1 ¶ 49.) Roll Service filed an amended claim for benefits under this policy, demanding payment of the sum of $1,756,697.00, to and

including the date of August 31, 2001, pursuant to the provisions of the policy. (Def.'s 56.1 ¶ 50.)

Since the submission of the amended claim, the replacement oven has continued to malfunction.

(Def.'s 56.1 ¶ 51.) In an Answer to an Interrogatory propounded by Amerisure, Roll Service stated

that the performance problems with the replacement oven include but are not limited to:

> 1. [u]neven temperature distribution in the oven causing product damage[,]
> 2. [e]xterior vertical supports of the oven broke loose from their floor anchoring[,]
> 3. [a]nchor bolts that secure the track to the oven floor broke off at floor level[,]
> 4. [b]rown stains and peeling paint at the oven door entrance[,]
> 5. [d]ifficulty opening and closing the oven door entrances[,]
> 6. [m]ain oven door gaskets do not remain in proper position[,]
> 7. [o]ven fails to operate at lower temperatures[,]
> 8. [t]he temperature chart recorder was not installed with the oven at the time of installation[, and]
> 9. [f]laking of metal within the oven.

(Pl.'s 56.1 ¶ 20.)

## DISCUSSION

The construction of the provisions and terms of an insurance policy is a question of law.

*Archer-Daniels-Midland Co. v. Phoenix Assurance Co. of New York*, 975 F. Supp. 1124, 1126 (S.D.

Ill. 1997).

> In construing an insurance policy, the Court's task is to ascertain the intent of the parties to the contract, "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." . . . If the policy language is unambiguous, there is no issue of material fact, and the Court must determine the contract's meaning as a matter of law affording the contract its plain, ordinary, and popular meaning.

*Archer-Daniels-Midland*, 975 F. Supp. at 1126 (quoting *Outboard Marine Corp. v. Liberty Mut. Ins.*

*Co.*, 154 Ill. 2d 90, 108 (1992)) (internal citations and footnote omitted).

> [I]f a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured. . . . A term is ambiguous if it is subject to more than one reasonable interpretation. . . . Ambiguous language is strictly construed against the

insurance company because the insurer is the drafter of the policy. . . . Thus, the insured's interpretation of an unclear provision must prevail "in order to effectuate 'the predominate purpose of the contract which is to indemnify the insured.'"

*Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987) (quoting *Hartford Accident & Indem. Co. v. Neff*, 594 F. Supp. 317, 320 (N.D. Ill. 1984)) (internal citations omitted).

The policy provided Roll Service with business interruption insurance. The parties do not dispute that the explosion of the oven was a covered event or that Amerisure is liable under the policy for losses sustained due to the interruption of Roll Service's business. Rather, the parties dispute when Amerisure's liability under the policy ends, when the replacement oven was delivered or when the technical problems with the replacement oven are resolved.

The policy provides coverage for the actual loss of income sustained during the suspension of business operations during the Period of Restoration. The policy defines the Period of Restoration as ending on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." Amerisure argues that the "Period of Restoration" ended on March 11, 2000, when the replacement oven was delivered because, under the language of the policy, the period for the recovery of lost income ends when the damaged property should have been replaced. Roll Service argues that the "Period of Restoration" did not end on March 11, 2000, because the replacement oven was not of similar quality. Rather, Roll Service argues, the "Period of Restoration" ends when the replacement oven becomes fully operational.

Resolution of the motions for summary judgment turns on the interpretation of the term "similar quality" in the definition of Period of Restoration. "Similar quality" is an ambiguous term because it is susceptible to more than one reasonable meaning. For example, "similar quality" could mean (1) the same make and model as the original or (2) the same make and model as the original

as well as non-defective. Amerisure advances the former meaning; and Roll Service, the latter.

"'The general purpose of business interruption insurance is to protect the earnings which the insured would have enjoyed had no interruption occurred.'" *Lyon Metal Prods., L.L.C. v. Prot. Mut. Ins. Co.*, 321 Ill. App. 3d 330, 342 (2001) (quoting *A. Miller & Co. v. Cincinnati Ins. Co.*, 217 Ill. App. 3d 572, 576 (1991)). An interpretation of the term "similar quality" that would permit the replacement of damaged equipment with defective goods would not "effectuate 'the predominate purpose of the contract which is to indemnify the insured.'" *Karaganis*, 811 F.2d at 361.

There is a genuine issue of material fact as to whether the replacement oven is not of similar quality or just not functioning in the manner Roll Service seeks. As was noted above, there are problems with the replacement oven, but it is unclear whether these problems would render the replacement oven non-functional. While the problems with the replacement oven have caused imperfections in the surface of Teflon-coated rolls which were treated in the replacement oven, the evidence presented establishes that Roll Service can still use the replacement oven for at least some of its applications.

There is also a genuine issue of material fact as to when the replacement oven should have been delivered. Roll Service received a price quotation on a replacement oven on October 25, 1999, that stated that a replacement oven could be delivered, assembled and ready for operation within eight weeks of acceptance of the quotation. However, the price quotation was not accepted until December 1999; and the replacement was not delivered until March 11, 2000. Furthermore, the parties allude to, but do not disclose, some other causes of the delayed delivery. Moreover, there is evidence that Amerisure participated in the negotiations with Jensen Oven. Because there are genuine issues of material fact as to whether the replacement oven is of "similar quality" and when

-9-

the replacement should have been delivered, Roll Service's motion for summary judgment and Amerisure's motion for partial summary judgment are denied.

## CONCLUSION

For the reasons stated herein, Amerisure's Motion for Partial Summary Judgment on Coverage and Roll Service's Motion for Summary Judgment are denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: September 18, 2002